## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
_____

ERIC LYNCH.,

                        Plaintiff,

            v.                                          6:24-CV-1538
                                                        (GTS/MJK)

JOHN H. CRANDALL, *et. al.*

                        Defendants.
_____

ERIC LYNCH, Plaintiff, *pro se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE GLENN T. SUDDABY, U.S. DISTRICT COURT JUDGE:

### ORDER and REPORT-RECOMMENDATION

Plaintiff commenced this action on December 17, 2024, by filing a complaint and moving for a temporary restraining order and preliminary injunction (Dkts. 1, 3). On December 18, 2024, United States District Judge Glenn T. Suddaby administratively closed this matter because Plaintiff failed to pay the appropriate filing fee. (Dkt. 5). On January 13, 2025, Plaintiff filed a motion for leave to proceed *in forma pauperis* together with an inmate authorization form. (Dkt. 5). On January 14, 2025, Plaintiff's application for a temporary restraining order and preliminary injunction was denied without prejudice. (Dkt. 8). The Clerk has sent Plaintiff's complaint and application to proceed *in forma pauperis* ("IFP") to this Court for review. (Dkt. 1, 5).

1

I.    **IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. 5). After reviewing his application, this Court finds that Plaintiff is financially eligible for IFP status.

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, courts must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which states that courts shall dismiss a case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Although courts have a duty to show liberality toward *pro se* litigants and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, courts still have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d

Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.    **Complaint**

Plaintiff asserts various constitutional claims arising from his March 9, 2017 arrest resulting from a domestic incident in Herkimer County. (Compl., ¶ 23). The Court will not provide a full recitation of Plaintiff's factual allegations but will incorporate them as necessary in its analysis of Plaintiff's five claims.

3

Plaintiff seeks injunctive relief and unspecified monetary damages, against the defendants, as described below.

### III.  <u>Judge John H. Crandall</u>

Herkimer County Court Judge John H. Crandall is immune from suit. "[T]he New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). Here, Plaintiff's complaint brings an action against Judge Crandall in (what the Court believes) is his official capacity. As a result, this claim cannot stand because Judge Crandall enjoys Eleventh Amendment Immunity. *Id.*

To the extent the complaint alleges any claims against Judge Crandall in his personal capacity, it is subject to dismissal on judicial immunity grounds. *See McNair v. Utica Police Dep't,* 6:23-CV-699 (DNH/ATB), 2023 WL 4935993, at *3 (N.D.N.Y. June 26, 2023), *report and recommendation adopted,* No. 6:23-CV-699, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023). Judges have absolute immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in

nature'") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). "Judicial

immunity applies even when the judge is accused of acting maliciously or corruptly."

*Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y.

Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, (1976))), *report and*

*recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019). "The only two

circumstances in which judicial immunity does not apply is when [the judge] takes

action 'outside' [their] judicial capacity [or] when the judge takes action that, although

judicial in nature, is taken 'in absence of jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at

11-12). Here, Plaintiff fails to plausibly allege that Judge Crandall was acting outside of

his judicial capacity or in the absence of jurisdiction. The complaint should therefore be

dismissed against Judge Crandall in his individual capacity with prejudice and without

leave to amend.

## IV. <u>Sylvia M. Rowan – Herkimer County Clerk</u>

Herkimer County Clerk Sylvia M. Rowan is immune from suit. The immunity

afforded to judges also applies to government officials for their acts that assist a judge

in the performance of their judicial duties. *See Cleavinger v. Saxner*, 474 U.S. 193, 200

(1985); *see also Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *Oliva v. Heller*,

839 F.2d 37, 39-40 (2d Cir. 1988). In the State of New York, a County Clerk's duties

include those of a state-court clerk. *See* N.Y. Const. Art. VI, § 6(e); *see also* N.Y.

County Law § 525(1); *Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. Apr. 26,

5

2005) (quoting *Ashland Equities Co.*, 110 A.D. 2d 60 at 63 (1st Dept. 1985 )) (holding that the Bronx County Clerk's "'primary function' is to 'serve as clerk of the Supreme Court' of Bronx County, a state court"), *aff'd sub nom.*, *Diaz v. Paterson*, 547 F.3d 88 (2d Cir. 2008). Here, Plaintiff's claim against Defendant Rowan arises from her alleged denial of "Plaintiff's numerous requests for a list of every Jury Trial ever conducted by the Honorable John H. Crandall in Herkimer County." (Compl., ¶ 39). In sum, Plaintiff's allegations—that Defendant Rowan failed to comply with his requests—fall within the scope of the Clerk's responsibilities. So, Defendant Rowan is immune from suit. The Court recommends that Plaintiff's complaint, as to Defendant Rowan, be dismissed with prejudice and without leave to amend.

## V.    Robert Fuller, Therese Soules, Cara Johnson, and Sharon M. Barnes

Defendants Fuller, Soules, Johnson, and Barnes are immune from suit. Judicial immunity has been extended to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar. *See Cleavinger*, 474 U.S. at 200; *see also Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal). Indeed, "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the

judicial process" and are thus entitled to absolute immunity. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Bey v. New York*, No. 11-CV-3296, 2012 WL 4370272, at *7 (E.D.N.Y. 2012) (holding that court clerks were entitled to "absolute quasi[-]judicial immunity" in suits alleging they refused to file documents); *Humphrey v. Court Clerk for the Second Circuit*, No. 08-CV-0363, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court" (citing *Rodriguez*, 116 F.3d at 67)). Here, Plaintiff alleges that Defendants Fuller, Soules, Jonson, and Barnes:

- refused to "record into Plaintiff's record" certain documents (Dkt. No., ¶ 33);

- "created and used a fake indictment number" (Dkt. No., ¶ 38); and

- "repeatedly denied and/or ignored Plaintiff's numerous requests for a list of every Jury Trial ever conducted by the Honorable John H. Crandall in Herkimer County" (Dkt. No., ¶ 39).

As the alleged actions, or inactions, occurred within the scope of Defendants' functions as court clerks, the Court recommends that Plaintiff's complaint as to Defendants Fuller, Soules, Johnson, and Barnes be dismissed with prejudice and without leave to amend.

# VI.    Lorraine H. Lewandrowski, Patrick E. Russell, and Karen A. Mowers

"Prosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.'" *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia, Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00-CV-3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses[;]" "the knowing use of perjured testimony[;]" "the deliberate withholding of exculpatory information[;]" the "making [of] false or defamatory statements in judicial proceedings[;]" and the "conspiring to present false evidence at a criminal trial[.]"[1] Here, paragraph 39 of the complaint alleges in part that Defendants Lewandrowski, Russell, and Mowers "repeatedly denied and/or ignored Plaintiff's numerous requests

---

[1] *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)); *Imbler*, 424 U.S. at 431 n.34; *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory*, 25 F.3d at 83.

8

for a list of every Jury Trial ever conducted by the Honorable John H. Crandall in Herkimer County." Like previously noted, because the alleged conduct occurred within the scope of their employment, Defendants Lewandrowski, Russell, and Mowers are immune from suit and the Court recommends that the complaint be dismissed against them with prejudice and without leave to amend.

## VII.  Amy C. Rosato and Lisa Evans

Defendants Rosato and Evans are immune from suit. Court reporters are entitled to qualified immunity from suit for civil damages "as long as their conduct does not violate clearly established statutory or constitutional rights." *McCaw v. McFallland*, 17-CV-6431 (CM), 2018 WL 10701609, at *1 (S.D.N.Y. Apr. 2, 2018) (citing, *inter alia*, *Antoine v. Byers & Anderson Inc*., 508 U.S. 429, (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit). To the extent Plaintiff claims that inaccurate transcriptions deprived him of due process, his claims fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts. *See Curro v. Watson*, 884 F. Supp. 708, 720-23 (E.D.N.Y. 1995) (dismissing § 1983 claims that alleged that court reporters in the plaintiff's criminal trial deliberately altered transcripts because New York provides an adequate post-deprivation remedy), *aff'd*, 100 F.3d 942 (2d Cir. 1996); *see also Burrell v. Swartz*, 558 F. Supp. 91, 92 (S.D.N.Y. 1983) ("No constitutional or federal statutory right exists to an absolutely accurate trial transcript.").

Plaintiff does not allege that he attempted to avail himself of any procedure to have the allegedly improper transcripts corrected, or that he raised the issue on appeal.

*See generally* (Compl.). Also, because Plaintiff does not allege any facts suggesting that Defendants Rosato and Evans engaged in any conduct that violated Plaintiff's clearly established constitutional rights, they are entitled to qualified immunity from suit. *See McCaw*, 2018 WL 10701609, at *2. The Court, therefore, recommends that the complaint, with respect to Defendants Rosato and Evans, be dismissed with prejudice and without leave to amend.

## VIII.  <u>Christine Brown – Commissioner of Jurors</u>

Defendant Brown is immune from suit. "[T]he Eleventh Amendment [bars individuals] from suing state officials in federal court for a violation of state law." *Catone v. Spielmann*, 149 F.3d 156, 160 n.1 (2d Cir. 1998). "The term 'state official' encompasses a wide array of state actors such as case-flow coordinators, commissioners of jurors, and other state actors." *Ruotolo v. Figueroa,* No. 1:22-CV-169 (LEK/DJS), 2024 WL 688798, at *4 (N.D.N.Y. Feb. 20, 2024) (citing *Irazu v. Sainz De Aja*, 2023 WL 8447256, at *1-2 (2d Cir. 2023)) (finding case-flow coordinator was entitled to Eleventh Amendment immunity); *see also Derrick v. Bergren*, 2 Misc. 3d 396, 398, (N.Y. Sup. Ct. 2003) (holding that commissioner of jurors was a state official entitled to Eleventh Amendment immunity); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (noting that Eleventh Amendment immunity extends to state agents). Here, the very essence of Plaintiff's claims against Defendant Brown triggers Eleventh Amendment immunity because he is alleging a failure to carry out official duties. The Court

10

therefore recommends that the complaint, with respect to Defendant Brown, be dismissed with prejudice and without leave to amend.

## IX.    Herkimer County Multi-Bench Courts

The Herkimer County Multi-Bench Court is not a legal entity that is subject to suit. Even if it was, it would be immune from suit because "the New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *See Gollomp*, 568 F.3d at 366. Accordingly, the Court recommends that the complaint, with respect to the Herkimer County Multi-Bench Court system, be dismissed with prejudice and without leave to amend.

## X.    Herkimer County

Under § 1983, a municipality is responsible only for its "own illegal acts" and cannot be held vicariously liable for the constitutional violations of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may be held liable only where an "official municipal policy" causes the constitutional deprivation. *Id.* (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). "Official municipal policy" includes laws passed by legislators, acts of policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Id.* at 61. Accordingly, a plaintiff may satisfy the policy or custom requirement in one of four ways: (1) "a formal policy officially endorsed by the municipality;" (2) "actions taken by government officials responsible for establishing the municipal policies that

11

caused the particular deprivation in question;" (3) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware;" or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

Here, Plaintiff's theory of municipal liability is that Herkimer County "repeatedly denied and/or ignored Plaintiff's numerous requests for a list of every Jury Trial ever conducted by the Honorable John H. Crandall in Herkimer County." (Compl, ¶ 39). Absent from the complaint are any allegations that Herkimer County had a policy, custom, or practice that would be tantamount to violating a person's constitutional rights.

Further, Plaintiff does not have a Fifth or Fourteenth Amendment right to a list of every jury trial that Judge Crandall has presided over, as alleged. To the extent that any constitutional right did exist, it would be a First Amendment claim. It is well settled that "[t]he public has a qualified right of access under the First Amendment to 'judicial documents.'" *McBride v. Global Valuation Ltd.* 714 Fed. App'x 92 (2d Cir. 2018) (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016)); *see also Newsday LLC v. County of Nassau*, 730 F.3d 156, 163-64 (2d

Cir. 2013). "Judicial document" means any "filed item … relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein*, 814 F.3d at 139 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). The term "judicial document" encompasses pleadings, including pleadings in settled cases, *Id*. at 140; pretrial motions and associated documents, *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (citing *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987)); and docket sheets, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)). A list of cases over which Judge Crandall presided is not a "judicial document," as defined in *Bernstein*.

Accordingly, the Court recommends that the complaint, as to Herkimer County, be dismissed with prejudice and without leave to amend.

## XI.   **Statute of Limitations**

Claims brought under Section 1983 generally must be filed within three years of the date a claim accrues.[2] Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Except for Plaintiff's first and fifth claims which assert dates on which his claims could plausibly have accrued, the remainder do not provide the

---

[2] The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5).

Court with any guidance to determine whether they are timely. In any event, as discussed above, all Defendants, except for Herkimer County, are immune from suit and the Court therefore does not need to determine whether any of Plaintiff's claims were timely commenced. As to Herkimer County, Plaintiff's claim fails to state a claim upon which relief can be granted even if timely filed.

## XII.   Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of the complaint *sua sponte*, it should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, any amendment would be futile as to all Defendants. The Court therefore recommends that the complaint be dismissed in its entirety with prejudice and without leave to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED**,[3] and it is further

---

[3] The court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

14

**RECOMMENDED,** that the District Court **DISMISS** the complaint (Dkt. No. 1) **WITH PREJUDICE** in its entirety against **ALL** defendants and without leave to amend, and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[4]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  April 9, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

[4] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 16 of 90

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]    On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

 **\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 17 of 90
Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]      Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 18 of 90

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 19 of 90

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

**B. Eighth Amendment**

**1. Excessive Force Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to

whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Failure To Intervene**

*5 The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**3. Deliberate Indifference to Serious Medical Needs**

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 21 of 90

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 22 of 90

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]   The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at **4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D. Fourteenth Amendment**

**1. Equal Protection/Discrimination**

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Due Process**

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 23 of 90

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]     The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]     The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 24 of 90

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer,* No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer,* 364 F.3d at 66; *see also Davis,* 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis,* 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz,* 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna,* 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack,* No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker,* 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord,* No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly,* 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi,* No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord,* No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr,* No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 6:24-cv-01538-GTS-MJK   Document 12   Filed 04/09/25   Page 25 of 90
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs,* No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 6:24-cv-01538-GTS-MJK   Document 12   Filed 04/09/25   Page 26 of 90

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]   If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

2023 WL 4935993
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,
v.
UTICA POLICE DEPARTMENT, et al., Defendants.

6:23-CV-699 (DNH/ATB)
|
Signed June 26, 2023

**Attorneys and Law Firms**

BRANDON T. McNAIR, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a pro se complaint filed by plaintiff Brandon T. McNair, in which he has sued various defendants based on several civil rights claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. IFP Application**
Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at \*2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

**II. Complaint**
**\*2** Plaintiff alleges that on July 27, 2021 at approximately 10:00 a.m., he was on the "east side" of Utica, New York when the "cops hopped out [and] detained [him and] tried to search [him.]" (Compl. at 4). He further alleges that, based off a general description, the police searched plaintiff because he was "black in a certain area where a man with a gun had been alleged to be there." (*Id.*). Plaintiff was arrested after "running for [his] life in an attempt to keep [the police] from violating [his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2nd was a holiday, during which the trial was recessed. (*Id.*). On November 3rd, Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15th. (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the mistrial was declared as of November 3rd. (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair*. Plaintiff also alleges that the police were "selective [and] omitted certain facts to

allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

### DISCUSSION

### III. Sovereign and Judicial Immunities

**\*3** The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at \*4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at \*2 (2d Cir. Oct. 17, 2022), *cert. denied*, No.

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976)), *report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See Edwardsen v. Aloi*, No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted*, 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to " 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478,

513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. Prosecutorial Immunity

**\*4** The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). In *Anilao*, the Second Circuit explained:

Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

*Id.* at 864. *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order to secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,]" "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious

prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his § 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

**\*5** The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case, although there is certainly less case law involving this scenario. Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case. *See, e.g.*, *Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution ... [and] are entitled to absolute immunity ...."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial ... is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate. *See Anilao*, 27 F.4th at 865 (" '[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority.... Prosecutors thus have absolute immunity in a § 1983 action ... so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted). In particular, there is no suggestion that DA McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

prosecutor would only be eligible for qualified immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33); *see also McDonough v. Smith*, No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' ") (quoting *Buckley*, 509 U.S. at 273); *Moye v. City of New York*, 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)). Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

### V. Defendant Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't,* No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)); *see also Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014). Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted. A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some

action that caused his injuries beyond merely employing the misbehaving officer.").

**\*6** A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

### VI. Eighth Amendment Cruel and Unusual Punishment

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

## VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

*7 Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [1] and it is

[1]    Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4935993

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 6:23-CV-00699**<br>McNair v. Utica Police Department et al | — | N.D.N.Y. | June 12, 2023 | Docket |

**History (2)**

**Direct History (2)**

1. McNair v. Utica Police Department
2023 WL 4935993 , N.D.N.Y. , June 26, 2023

*Report and Recommendation Adopted by*

2. McNair v. Utica Police Department
2023 WL 4931609 , N.D.N.Y. , Aug. 01, 2023

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 40 of 90

Coon v. Merola, Not Reported in Fed. Supp. (2019)
2019 WL 1981416

2019 WL 1981416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, et al., Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Donald James Coon, Troy, NY, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

*1  The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Donald James Coon, together with a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I. In Forma Pauperis ("IFP") Application**
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to

show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Although plaintiff's complaint is very conclusory, a liberal reading of the allegations contained therein show that plaintiff is attempting to allege that the Rensselaer County Clerk and his John/Jane Doe Deputy Clerks have violated plaintiff's constitutional rights in connection with a state court law suit that plaintiff has attempted to bring. (Complaint ("Compl.") generally) (Dkt. No. 1). In order to understand plaintiff's allegations in this action, the court must discuss another action filed by this plaintiff in 2016. In 2016, plaintiff filed a federal action in this court in which he named a variety of defendants, including Police Chief George Bell, the Villages of Cambridge and Greenwich, various district attorneys, Claverack Insurance Company, Glens Falls Hospital, Washington County Child Protective Services, and a police officer. Coon v. Bell, No. 1:16-CV-291 (TJM/DJS).

*2  After initial review of plaintiff's complaint in Coon v. Bell, Magistrate Judge Daniel Stewart found that plaintiff failed to state claims against the defendants and recommended that he be allowed to file an amended complaint in an effort to cure the deficiencies in the original. (Dkt. No. 8 in 16-CV-291). United States District Court Judge Thomas J. McAvoy adopted Magistrate Judge Stewart's recommendation on May 23, 2016. (Dkt. No. 11 in 16-CV-291). Plaintiff complied with the court's direction and filed an amended complaint on May 23, 2016. (Dkt. No. 12 in 16-CV-291).

2019 WL 1981416

Magistrate Judge Stewart conducted an initial review of the amended complaint and found that plaintiff failed to cure most of the deficiencies that were in the original. (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart recommended dismissing most of the claims and most of the defendants from the action, while allowing a Fourth Amendment illegal search claim and Fourth Amendment excessive force claim to proceed against defendant Bell.[1] (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart's recommendation was adopted by Judge McAvoy on November 2, 2016. (Dkt. No. 16 in 16-CV-291).

[1]    Defendant Bell has since passed away, and his estate's representative has been substituted as a party. (Dkt. Nos. 52, 71). Another defendant was joined to 16-CV-291, and there have been various other proceedings in that case, but those details are not relevant to this action.

In Magistrate Judge Stewart's report and recommendation, he found that plaintiff's defamation claims against defendant Bell and his attempted contract claims against defendant Bell and Claverack Insurance Company were, at best, state law claims.[2] (Dkt. No. 13 in 16-CV-291 at 4). Plaintiff then states that he "filed said claims" in the Rensselaer County Supreme Court. (Compl. at 1). Plaintiff states that in 2017, Judge Andrew G. Ceresia granted plaintiff poor person status, but that when he went to the Rensselaer County Clerk's office, defendant Merola told plaintiff that Judge Ceresia's order was "no good and they wouldn't honor it." (Compl. at 2). Plaintiff states that he brought Judge Ceresia's order to the Clerk's office four more times, and "finally" on March 11, 2019, a clerk that plaintiff had never seen before stamped the Judge's order and kept a copy. (*Id.*)

[2]    Although plaintiff states in this action that Magistrate Judge Stewart told plaintiff that the contract and defamation claims "needed to be refiled in Supreme Court," that is not exactly what Magistrate Judge Stewart said. His exact words were that "[l]iberally construed, plaintiff ***might*** be attempting to make state law defamation and intentional interference with a contract claims. ***Again, however, Plaintiff's vague and conclusory allegations fail to plausibly state such claims.***" (Dkt. No. 13 in 16-CV-291 at 4) (emphasis added). The court merely notes this for the record. Magistrate Judge Stewart's dismissal

and his language are not relevant to the findings herein.

Plaintiff alleges that he has been denied his "rightful benefits and access to the court." Plaintiff states that he even had "to choose between the suit or my housing," and that he was homeless from January 12, 2018 until April 24, 2018. (*Id.*) Plaintiff states that the Rensselaer County Supreme Court wrote plaintiff "2 times the County Clerk's staff made me pay for RJI motion I had already paid for. They told me to give letter [sic] to the Clerk and I would get my monies back." (*Id.*)

Plaintiff states that he is seeking "just compensation" for the Rensselaer County Clerks' actions who refused to recognize his "poor person status" from 2017 until 2019. Plaintiff states that he still has not "received anything" from the "grant[ed] status" because the Clerks refused to grant "my said status." (*Id.*) Plaintiff seeks substantial monetary relief. (*Id.*)

### III. Judicial Immunity

#### A. Legal Standards

**\*3**  With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Absolute immunity extends to court clerks who perform tasks " 'which are judicial in nature and an integral part of the judicial process.' " *Proctor v. Quinn*, No. 19-CV-833, 2019 WL 692935, at \*2 (E.D.N.Y. Feb. 19, 2019) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). The court's " 'inherent power to control its docket is part of its function of resolving disputes between parties' and is thus 'a function for which judges and their supporting staff

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 42 of 90

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

are afforded absolute immunity.' " *Id.* (quoting *Rodriguez*, 116 F.3d at 66); and citing *Pikulin v. Gonzalez*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents"). However, a court clerk may not be entitled to absolute immunity where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights. *Glass v. New York Supreme Court Appellate Division*, No. 1:17-CV-226, 2017 WL 9487181, at *3 (N.D.N.Y. Apr. 26, 2017) (citations omitted).

In determining whether the clerk's conduct in a particular case is "judicial" in nature, the court takes a "functional approach" and allows the defendant absolute immunity when the clerk is performing a "discretionary act, or performing a duty that inherently relates to resolving a dispute." *Vance v. State of New York Dep't of Corrections*, No. 9:18-CV-748, 2018 WL 6047828, at *10 (N.D.N.Y. Nov. 19, 2018) (quoting *Dzwonczyk v. Suddaby*, No. 10-CV-0300, 2010 WL 1704722, at *6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez*, 116 F.3d at 67) (internal quotation marks omitted)).

**B. Application**

Plaintiff's statements in this case are conclusory and essentially, he is suing the "clerks" because they would not file his poor person status order between 2017 and 2019. At best, he alleges a delay in granting him poor person status because it appears that a clerk finally took and filed plaintiff's order, and at the end of his complaint, plaintiff alleges that he "still" has not "received a thing or any help from ***the granted [sic] status***." (Compl. at 2) (emphasis added). It is unclear what plaintiff believes he should have "received" or to what "help" he thinks he is entitled from the clerks beyond filing his order.

It is also unclear how plaintiff alleges that he was denied "access to courts" because he states that he filed his state law claims in the Rensselaer County Supreme Court. (Compl. at 1). However, he claims he was denied his "rightful benefits," and that somehow the clerk's actions in delaying the filing of his poor person order were related to his homelessness between January 12, 2018 and April 24, 2018. Plaintiff claims that he had to choose between "the suit" or his housing, but he does not explain why this is true or why this would be a denial of his constitutional rights. Plaintiff also states that the clerks made plaintiff pay for his RJI "motion," but that he was told that if he wrote a letter, he would get his money back.

**\*4** As it is written, plaintiff's complaint is too conclusory to state a claim against any of the clerks in this action, whether named or unnamed, [3] and the court will recommend dismissal.

[3]     Finally, the court must note that the United States Marshal would not be able to effect service of process on a "John or Jane Doe" defendant. In order for plaintiff to pursue his claims against John Doe defendants, he would ultimately be required to ascertain their identity. *LaPoint v. Vasiloff*, No. 5:15-CV-185, 2015 WL 1524437, at *4 (N.D.N.Y. Apr. 2, 2015).

**IV.** <u>**Opportunity to Amend**</u>

**A. Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B. Application**

In this case, the court will recommend dismissal without prejudice, even though the court has serious doubts that plaintiff will be able to amend his complaint to state a claim. However, because there are situations in which a clerk would not be entitled to absolute immunity, and plaintiff in this case has failed to include enough facts for the court to make an accurate determination, the court will recommend dismissal without prejudice to plaintiff submitting an amended complaint.

If the court adopts this recommendation, and plaintiff is afforded the opportunity to amend, he should be afforded forty-five (45) days from the date of the order adopting this court's recommendation. Plaintiff should also be advised that if he files an amended complaint, it must be a complete pleading which must supercede the original and may not incorporate any facts from the original by reference.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED for purposes of filing**, and it is further

2019 WL 1981416

**RECOMMENDED**, that the complaint be **DISMISSED** based on quasi-judicial immunity and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) **WITHOUT PREJUDICE** to plaintiff filing an amended complaint, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be directed to file his amended complaint or ask for an extension of time to do so within **FORTY-FIVE (45) DAYS** from the date of the District Court's order adopting the recommendation, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint within the appropriate time, the court return the proposed amended complaint to me for initial review, and it is

**RECOMMENDED**, that if the court adopts this recommendation, and plaintiff fails to file an amended complaint or ask for an extension of time to do so at the expiration of the forty-five (45) days, the complaint be dismissed with prejudice and the case closed, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1981416

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:19-CV-00394**<br>Coon v. Merola et al | — | N.D.N.Y. | Apr. 03, 2019 | Docket |

**History (2)**

**Direct History (2)**

1. Coon v. Merola
   2019 WL 1981416 , N.D.N.Y. , Apr. 08, 2019

*Report and Recommendation Adopted by*

2. Coon v. Merola
   2019 WL 1978595 , N.D.N.Y. , May 03, 2019

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Coon v. Merola, Not Reported in Fed. Supp. (2019)

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 46 of 90

2019 WL 1978595

2019 WL 1978595
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, Rensselaer County Clerk; and Jane/
John Does, Clerks at County Clerk's Office, Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 05/03/2019

**Attorneys and Law Firms**

DONALD JAMES COON, Plaintiff pro se, 289 5th Avenue,
Troy, NY 12180.

## DECISION and ORDER

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Donald James Coon brought this civil
rights action pursuant to 42 U.S.C. § 1983. On April 8, 2019,
the Honorable Andrew T. Baxter, United States Magistrate
Judge, advised by Report-Recommendation that plaintiff's
complaint be dismissed without prejudice but that he be
given an opportunity to amend. No objections to the Report-
Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice;

2. Plaintiff is provided forty-five (45) days from the date of
this Decision and Order to file an amended complaint that
cures the defects identified in the Report-Recommendation;

3. If plaintiff files a timely amended complaint, it be
forwarded to the Magistrate Judge for review; and

4. If plaintiff fails to file an amended complaint within forty-
five (45) days of the date of this Decision and Order, the
complaint be dismissed with prejudice and without further
order.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1978595

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:19-CV-00394**<br>Coon v. Merola et al | — | N.D.N.Y. | Apr. 03, 2019 | Docket |

**History (2)**

**Direct History (2)**
1. Coon v. Merola
2019 WL 1981416 , N.D.N.Y. , Apr. 08, 2019

*Report and Recommendation Adopted by*

2. Coon v. Merola
2019 WL 1978595 , N.D.N.Y. , May 03, 2019

2012 WL 4370272
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Malcolm BEY, Francique Bey, Rein Bey,
Drizzle Bey, Truth Bey, and Amicus Curiae
Bey, in propia persona, sui juris, Plaintiffs,

v.

State of NEW YORK, Nassau County Inc., Nassau
County Family Court, Nassau County Child Protective
Services, Edmund Dane, Suzanne Leahey, Elizabeth
Mcgrath, rosalie fitzgerald, john Coppola, Alton
Williams, David Sullivan, Kathleen Rice, David Gotimer,
Bruce Cohen, Merry–Lou Ferro, Cheryl Kreger, Warren
Freeman, and Jane Doe/John Doe 1–100, Defendants.

No. 11–CV–3296 (JS)(WDW).
|
Sept. 21, 2012.

**Attorneys and Law Firms**

Malcolm Bey, Francique Bey, Rein Bey, Drizzle Bey, Truth
Bey, Amicus Curiae Bey, Uniondale, NY, pro se.

Ralph Pernick, Esq., N.Y.S. Attorney General's Office,
Mineola, NY, for Defendants N.Y.S. Defendants.

Liora M. Ben–Sorek, Esq., Nassau County Attorney's Office,
Mineola, NY, for Defendants County Defendants.

Adam Daniel Levine, Esq., Matthew K. Flanagan, Esq.,
Catalano, Gallardo & Petropoulous, LLP, Jericho, NY, for
Defendant Bruce Cohen, Esq.

Jessica Zimmerman, Esq., Marian C. Rice, Esq., L'Abbate,
Balkan, Colavita & Contini LLP, Garden City, NY, for
Defendant Cheryl Kreger, Esq.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Presently pending before the Court are the following
motions: (1) Plaintiff Malcolm Bey's ("Mr.Bey") motions
to "set aside and vacate" this Court's Order dated July 28,
2011 (Docket Entries 19, 27); (2) Mr. Bey's motion for a

default judgment (Docket Entry 39); (3) a motion to dismiss
the claims against Defendants State of New York, Nassau
County Family Court, Judge Edmund Dane, Judge David
Sullivan, Rosalie Fitzgerald, and John Coppola (the "State
Defendants") (Docket Entry 25); (4) a motion to dismiss
the claims against Bruce Cohen (Docket Entry 29); and (5)
motions to dismiss the claims against Cheryl Kreger (Docket
Entries 18, 32).[1] For the following reasons, Mr. Bey's
motions to vacate and for a default judgment are DENIED and
the motions to dismiss are GRANTED (with the exception of
Defendant Kreger's letter-motion at Docket Entry 18, which
is DENIED AS MOOT).

[1]    There is also a motion pending at Docket Entry
      23. This is not a motion, however, but rather an
      opposition to Plaintiffs' motion to vacate. The Clerk
      of the Court is directed to terminate the motion and
      amend the docket entry to reflect that it is a "Letter
      in Opposition" to Docket Entry 19.

*BACKGROUND*

The Plaintiffs in this action are Mr. Bey; his wife, Francique
Bey ("Mrs.Bey"), and their minor children, Rein Bey, Drizzle
Bey, Truth Bey, and Amicus Curiae Bey (the "Bey Children").
Mr. Bey commenced this action *pro se,* on behalf of himself,
his wife, and his children against Nassau County, Inc. [sic],
Nassau County Child Protective Services ("CPS"), Suzanne
Leahey, Elizabeth McGrath, Alton Williams, Nassau County
District Attorney Kathleen Rice, David Gotimer, Merry–
Lou Ferro, and Warren Freeman (collectively, the "County
Defendants"), the State Defendants, Mr. Cohen, and Ms.
Kreger arising out of petitions for child neglect that were
filed in Nassau County Family Court in 2009 and 2010.
The Court will briefly summarize the facts as stated in the
Complaint-which are presumed to be true for the purposes of
this Memorandum and Order-that are relevant to the pending
motions.

On or around June 4, 2009, the Bey Children were questioned
at school by CPS regarding suspected child abuse occurring
in the Bey home. (Compl.¶ 26.) The Bey Children were later
taken to the police station for further questioning. (Compl.¶
26.) Mrs. Bey was arrested, and the Bey Children returned
home with their father. (Compl.¶ 26.) The following day,
however, the Bey Children were removed from the home and
placed in foster care (Compl.¶¶ 27, 31), and on or around June

9, 2009 petitions for neglect were filed with the Family Court against Mr. and Mrs. Bey. (Compl.¶ 31.)

Shortly thereafter, CPS inspected the Bey home and, after finding it habitable for the Bey Children, returned them to their father. (Compl.¶ 32.) A temporary restraining order was issued against Mrs. Bey, however, and she was only allowed supervised visitation with her children. (Compl.¶ 32.) She was ordered to take parenting and anger management classes. (Compl.¶ 34.) During this time, Mr. Bey "lost work" because he could not afford daycare, and he and his family were eventually evicted from their home. (Compl.¶ 35.) In December 2009, the neglect petition against Mr. Bey was withdrawn. (Compl.¶ 36.)

**\*2** In April 2010, a new neglect petition was filed and a temporary restraining order issued against Mr. Bey. (Compl.¶ 37.) During the next few months, the Bey Children were repeatedly questioned by CPS at school and visited by CPS twice a month at home. (Compl.¶ 39.) On June 7, 2010, Mr. Bey attempted to file an "objection and counterclaim" in Family Court, but Defendant Coppola, the Family Court's Deputy Chief Clerk, refused to file it. (Compl.¶ 40.) Mr. Bey was able to successfully file it, however, a few days later. (Compl.¶ 41.)

Mr. Bey returned to Family Court several times during the next few months for appearances before Judge Dane related to the neglect petition. (Compl.¶ 42.) [2] The proceedings were repeatedly adjourned, and Mr. Bey eventually told Judge Dane that he would not be returning to court. (Compl.¶ 42.) Judge Dane warned him that failure to appear would result in a warrant being issued for his arrest. (Compl.¶ 42.)

[2]     It appears as though Judge Dane presided over Mr. Bey's neglect proceedings. It is unclear what role, if any, Judge Sullivan had in these proceedings.

On October 19, 2010, Mr. Bey went to the Family Court to file papers and bumped into his court-appointed attorney, Mr. Cohen, leaving Judge Dane's chambers. (Compl.¶ 44.) Mr. Cohen advised him that he had missed a court appearance that morning before Judge Dane and that it had been rescheduled for 2:00PM. (Compl.¶ 44.) When Mr. Bey returned that afternoon, however, he was arrested for failing to appear that morning and incarcerated. (Compl.¶ 44.)

In January 2011, Judge Dane extended the temporary restraining order issued against Mr. Bey and ordered that he

be mentally evaluated. (Compl.¶ 45.) Mr. Bey returned to court on March 15, 2011 for trial. CPS asked Mr. Bey to turn custody of the Bey Children over to CPS for one year, but Mr. Bey refused and his trial was adjourned to April 29, 2011. (Compl.¶¶ 46.48.) Around the same time, Mr. Bey requested copies of "everything in the court file." (Compl.¶ 47.) Defendants Fitzgerald, the Family Court's Chief Clerk, and Coppola gave him some documents but not others. (Compl.¶ 47.) Mr. Bey returned to court on April 29 and was asked to turn over custody of his children to CPS for six months, but he again refused. (Compl.¶ 49.) His trial was adjourned to May 13, 2011. (Compl.¶ 49.) On that date, he was again asked to give CPS custody of his children. (Compl.¶ 50.) This time, Ms. Kreger, the Bey Children's appointed law guardian, "attempt[ed] to coerce" him to agree to it, but he again refused. (Compl.¶ 50.) The trial was rescheduled to June 8, 2011 (Compl.¶ 51), and on June 15, 2011, Ms. Kreger spoke with the Bey Children at school about the alleged neglect (Compl.¶ 52.)

Mr. Bey commenced this action on July 8, 2011, asserting claims for, *inter alia,* violations of the Constitution (*e.g.,* due process and unreasonable search and seizure), various criminal statutes (*e.g.* genocide and kidnapping), international treaties and provisions of the United Nations' Charter, as well as a claim under the Alien Tort Claims Act and claims for "breech [sic] of trust and fiduciary duty," for "use of statutes[,] ordinances, rules and policies of the corporate state of New York[,] not a rule of law against indigenous man," and fraud. He is seeking monetary, declaratory, and injunctive relief. Mr. Bey simultaneously filed an application for a temporary restraining order and preliminary injunction which was denied by this Court on July 13, 2011. [3]

[3]     The contents of Mr. Bey's application are incomprehensible; however, the Complaint asserts that he is seeking an order enjoining the Family Court proceeding and vacating any judgments issued to date.

**\*3** On July 28, 2011, this Court entered an Order that: (1) reminded Plaintiffs that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure they had to serve process on Defendants by November 7, 2011 or their Complaint would be dismissed; (2) advised Plaintiffs of their duty to keep the Court informed of any change of address; and (3) warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed without prejudice unless

counsel entered a notice of appearance on their behalf within thirty days. (Docket Entry 7.) No counsel has filed a notice of appearance on behalf of the Bey Children to date.

Presently pending before the Court are the following: (1) Mr. Bey's motions to vacate the July 28, 2011 Order, (2) motions to dismiss filed on behalf of the State Defendants, Mr. Cohen, and Ms. Kreger, and (3) Mr. Bey's motion for a default judgment against all Defendants. [4] Plaintiffs have not opposed the motions to dismiss.

[4]    The County Defendants did not move to dismiss but rather answered the Complaint on November 7, 2011 and asserted cross-claims against the other defendants for indemnification and/or contribution.

### DISCUSSION

Before discussing the merits of the pending motions, the Court must briefly address a threshold issue. Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record ... or, by a party personally if the party is unrepresented." Since a non-attorney, *pro se* party may not represent another's interests, *see Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir.1998),* every *pro se* plaintiff must sign a copy of the operative complaint in order to be a party to the action, *see Lynch v. DeMarco,* No. 11–CV–2602, 2011 WL 3418390, at *2 (E.D.N.Y. July 29, 2011). Here, only Mr. Bey signed the Complaint; therefore, he is the only proper plaintiff in this action. If the Court does not receive a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order, all of her claims will be dismissed.

### I. *Motion to Set Aside and Vacate*
On September 19, 2011, Mr. Bey filed a motion requesting that the Court "take mandatory judicial notice that the order dated July 28, 2010[sic], signed by Judge Joanna Seybert is inconsistent with Stare decisis [sic] Supreme Court Ruling [sic] *Winkleman v. Parma Central School District,* 550 U.S. 516 (2007)" and "set aside and vacate [this] void order." (Docket Entry 19.) Mr. Bey filed a similar (albeit less clear) motion to "take mandatory judicial notice" and "set aside and vacate" the July 28, 2011 Order on October 31, 2011. (Docket Entry 27.) These motions are denied for three reasons.

*First,* to the extent that Mr. Bey is seeking to vacate a "final judgment, order, or proceeding" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, his motion is premature as the July 28, 2011 Order is not a "final" order for the purposes of Rule 60(b). *See Byrne v. Liquid Asphalt Sys., Inc.,* 250 F.Supp.2d 84, 87 (E.D.N.Y.2003) ("Courts have held that a final judgment is needed to support a Rule 60(b) motion." (citation omitted)); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 526–27 (N.D.N . Y.1995) (finding that an order "dismissing some but not all of the defendants, and dismissing some but not all of plaintiff's claims, was interlocutory and thus not 'final' for the purposes of Rule 60(b)").

**\*4** *Second,* to the extent that Mr. Bey's motion is more properly construed as one for reconsideration under Local Civil Rule 6.3, his motion is time-barred. Local Civil Rule 6.3 requires motions for reconsideration to "be served within fourteen ¶ 4) days after the entry of the Court's determination of the original motion." Here, Mr. Bey waited almost two months after the Court issued its Order to file his first motion to vacate and another six weeks to file his second motion to vacate. Thus, both motions are time-barred and are, accordingly, DENIED. [5]

[5]    Mr. Bey argues that his motion is "timely because non attorneys are not bound by the same rules as attorneys." (Docket Entry 19, at 2.) This is not true. A plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotation marks and citation omitted).

*Finally,* Mr. Bey's argument in support of reconsideration is without merit. Mr. Bey argues that he and his wife may represent the interests of their infant children *pro se.* However, while a parent may bring a lawsuit on behalf of an infant child, it is well established that the parent cannot do so *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (holding that a father was not allowed to bring suit on behalf of his minor daughter without representation by counsel); *Berrios v. N.Y.C. Hous. Auth.,* 564 F.3d 130, 133 (2d Cir.2009) ("The fact that a minor or incompetent person must be represented by a next friend, guardian ad litem, or other fiduciary does not alter the principle ... that a non-attorney is not allowed to represent another individual in federal court litigation without the

assistance of counsel."). The Court warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed unless counsel filed a notice of appearance by August 27, 2011. More than a year has passed and no lawyer has appeared on behalf of the Bey Children. Accordingly, their claims are DISMISSED without prejudice.

## II. *Motion for Default Judgment*

Also pending is Mr. Bey's motion for the entry of default and a default judgment against all Defendants. A party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). In the present case, counsel for Defendants either filed a motion to dismiss or an answer on behalf of every Defendant (*see* Docket Entries 25, 29, 32, 34), and the Clerk of the Court noted this on December 7, 2011 when he refused to enter a certificate of default against Defendants (Docket Entry 44). Thus, there is no basis for entering a default judgment in this case, and Mr. Bey's motion is DENIED.

## III. *Motions to Dismiss*

There are three motions to dismiss pending: one filed by the State Defendants, one filed by Cheryl Kreger, and one filed by Bruce Cohen. The Court will first discuss the applicable standard of review before turning to the merits of the pending motions.

### A. *Standard of Review under Rule 12(b)(6)*

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). *First,* although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (alteration in original) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). *Second,* only complaints that state a "plausible claim for relief" survive a motion to dismiss. *Id.* (internal quotation marks and citation omitted). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotation marks and citation omitted). While *pro se* plaintiffs enjoy a somewhat more liberal

pleading standard, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted), they must still comport with the procedural and substantive rules of law. *Colo. Capital v. Owens,* 227 F.R.D. 181, 186 (E.D.N.Y.2005).

### B. *The State Defendants' Motion to Dismiss*

**\*5** For the following reasons, the Court grants the State Defendants' motion to dismiss.

#### 1. *Claims against New York State and the Nassau County Family Court*

All of Mr. and Mrs. Bey's claims against the State of New York and the Nassau County Family Court are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This bar precludes suits against states for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *see also Atl. Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993). Therefore, all claims against the State of New York must be dismissed with prejudice.

The Nassau County Family Court is also immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *Madden v. Vt. Sup.Ct.,* 8 F. App'x 128, 129 (2d Cir.2001) (finding that claims against the Vermont Supreme Court were barred by the Eleventh Amendment); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (finding that the New York state Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt,* No. 11–CV–5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York).

Accordingly, the claims against the Nassau County Family Court must also be dismissed with prejudice.

2. *Claims against Judge Dane and Judge Sullivan*
The claims for monetary relief against Judge Dane and Judge Sullivan must be dismissed because "[i]t is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction," *Miller v. Cnty. of Nassau,* 467 F.Supp.2d 308, 312 (E.D.N.Y.2006) (citing *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir.1988)), and that such "immunity is not overcome by allegations of bad faith or malice," *Mireles,* 502 U.S. at 11 (citation omitted); *see also Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Here, as all of the claims against Judge Dane and Judge Sullivan arise solely out of actions they allegedly took from the bench while presiding over various proceedings involving Mr. and Mrs. Bey, their alleged wrongful conduct falls squarely within the scope of absolute judicial immunity. Accordingly, all of Mr. and Mrs. Bey's claims for monetary relief are dismissed with prejudice.

**\*6** Mr. and Mrs. Bey are also seeking declaratory and injunctive relief, which do not fall within the ambit of judicial immunity. These claims, however, fail as a matter of law. *First,* Mr. and Mrs. Bey's claims for injunctive relief under Section 1983 are barred because "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Further, to the extent that Mrs. Bey's constitutional claims arise out of the ongoing Family Court proceedings, they are barred either by the *Younger* abstention doctrine, *see Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) ( "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)); *Donkor v. N.Y.C. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224–27 (S.D.N.Y.1987), or the *Rooker–Feldman* doctrine,[6] *see Phifer v. City of N.Y.,* 289 F.3d 49, 57 (2d Cir.2002) ("This court may not review the family court's

determinations regarding custody, neglect and visitation" if "those issues were decided by the family court after providing [the plaintiff] with a full and fair opportunity to litigate those issues").

6      Although it appears as though the Family Court proceedings against Mrs. Bey are ongoing and the neglect petitions filed against Mr. Bey have been dismissed (Kreger Decl. ¶ 7 n. 1), Mr. and Mrs. Bey are also seeking, *inter alia,* vacatur of the "judgments issued by The Family Court and Nassau County Court CPS" (Compl. at 42).

*Second,* Mr. and Mrs. Bey's claim for breach of the public's trust is not a cognizable cause of action. *See Brady v. Lynes,* No. 05–CV–6540, 2008 WL 2276518, at \*6 (S.D.N.Y. June 2, 2008).

*Third,* their claim under the Alien Tort Claims Act fails because they are not "aliens" within the meaning of the statute. *See Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002) (defining "alien" in the context of the Alien Tort Claims Act as a "foreign born person who has not qualified as a citizen of the country" (internal quotation marks and citation omitted)). Mr. and Mrs. Bey assert that they are "aliens" because they have declared their independence from the United States (*see* Mr. Bey's Aff. in Support of Prelim. Inj. ¶ 4 ("Indigenous Affiant declares independence from the USA and all sub-corporations thereof, and heretofore, herein and hereafter claims absolute power, authority and control over himself, without limitation, and herein states, for the record, that he is a free, sovereign indigenous political power holder ...."); *see also* Compl. at 1 (Mr. Bey describing himself as a "Free Indigenous Sovereign Political Power Holder"); *id.* at 42 (requesting a "Declaratory Judgment verifying the lawful indigenous status of The Bey Family")); however, such arguments have been uniformly rejected by courts in this Circuit and others, *see, e.g., United States v. Hilgeford,* 7 F.3d 1340, 1342 (7th Cir.1993) ("The defendant in this case apparently holds a sincere belief that he is a citizen of the mythical 'Indiana State Republic' and for that reason is an alien beyond the jurisdictional reach of the federal courts. This belief is, of course, incorrect."); *Duwenhoegger v. King,* No. 10–CV–3965, 2012 WL 1516865, at \*14 (D.Minn. Feb. 13, 2012) ("[A]ny argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a "Sovereign Citizen" is frivolous." (collecting cases)); *M & I Marshall & Ilsley Bank v. Glavin,* No. 10–CV–0616, 2011 WL 322663, at \*1 (W.D.Wis. Jan. 31, 2011) ("This 'sovereign citizen' argument has been rejected repeatedly by courts.");

*United States v. Lumumba*, 741 F.2d 12, 14–15 (2d Cir .1984) (rejecting criminal defendant's argument that he is immune from prosecution due to his "proclaimed status" as "Vice President and Minister of Justice" of the "independent state" of "the Republic of New Afrika"—a self-created "Nation of Afrikans born in North America as a consequence of ... slavery" (alteration in original)).

**\*7**  *Fourth,* any of Mr. and Mrs. Bey's claims arising under Title 18 of the United States Code necessarily fail because there is no private right of action under criminal statutes, *see, e.g., Sanchez v. Dankert,* No. 00–CV–1143, 2002 WL 529503, at *10–11 (S.D .N.Y. Feb. 22, 2002) (collecting cases), and there is similarly no private right of action under international treaties or provisions of the United Nation's Charter, *see, e.g., id.* at *11; *United States v. De La Pava*, 268 F.3d 157, 164 (2d Cir.2001) ("[T]here is a strong presumption against inferring individual rights from international treaties."); *Garza v. Lappin,* 253 F.3d 918, 924 (7th Cir.2001) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts."); RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES,,,, § 907 cmt. a. ("International agreements ... generally do not create private rights or provide for a private cause of action in domestic courts...."); *Joyner–El v. Giammarella,* No. 09–CV–3731, 2010 WL 1685957, at *3 n. 4 (S.D.N.Y. Apr. 15, 2010) (finding that the United Nations' Universal Declaration of Human Rights and Declaration on the Rights of Indigenous Peoples do not create federal causes of action (citing *Sosa v. Alvarez–Machain,* 542 U.S. 692, 734, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004))).

*Finally,* Mr. and Mrs. Bey's claim that "any Laws[,] statutes, ordinances and rules made since 1867 are unconstitutional" because Congress "ceased to exist as a lawful deliberative body" after the South seceded from the Union during the Civil War is frivolous and entirely without merit.

Accordingly, all claims against Judge Sullivan and Judge Dane are hereby dismissed with prejudice. [7]

---

[7]    To the extent that Mr. and Mrs. Bey assert claims for declaratory relief arising under state law, the Court declines to extend supplemental jurisdiction, and those claims are dismissed without prejudice. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

3. *Claims against Defendants Fitzgerald and Coppola*
Defendants Fitzgerald and Coppola are also entitled to immunity because it is well established that "the clerk of the court and deputy clerks are shielded by an absolute quasijudicial immunity, particularly when they 'perform tasks that are an integral part of the judicial process.' " *McGann v. Lange,* No. 96–CV–0859, 1996 WL 586798, at *2 (E.D.N.Y. Oct. 10, 1996) (quoting *Mullis v. U.S. Bankr.Ct.,* 828 F.2d 1385, 1390 (9th Cir.1987)); *see also Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the "court's inherent power to control its docket is part of its function of resolving disputes between parties" and is thus "a function for which judges and their supporting staff are afforded absolute immunity"). In this case, Mr. and Mrs. Bey allege that Defendant Coppola refused to file Mr. Bey's "objection and counter claim" (Compl.¶ 40) and that Coppola and Fitzgerald did not provide him with a copy of the entire court file upon request (Compl .¶ 47). Courts have found similar actions by court clerks to be shielded by absolute quasi-judicial immunity. *See, e.g., Rodriguez,* 116 F.3d at 66 (finding that clerks were entitled to quasi-judicial immunity for, *inter alia,* refusing an inmate's request for records on appeal); *Pukulin v. Gonzalez,* No. 07–CV–0412, 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office['s] activities of filing and docketing legal documents"); *McKnight v. Middleton,* 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (granting immunity to Family Court clerk for claims arising out of his failure to process the plaintiff's motions); *Mullis,* 828 F.2d at 1390 (finding that clerk was entitled to quasi-judicial immunity for, *inter alia,* refusing to file a document with the court); *Stewart v. Minnick,* 409 F.2d 826, 826 (9th Cir.1969) (holding that quasi-judicial immunity shielded court clerk from suit arising out of his refusal to provide litigant with a portion of the trial transcript).

**\*8**  Accordingly, and for the reasons discussed above, all claims against Defendants Fitzgerald and Coppola are dismissed.

C. *Defendant Cohen's Motion to Dismiss*
The only allegations in the Complaint against Defendant Cohen, who according to the Complaint was Mr. and Mrs. Bey's court-appointed attorney (Compl.¶ 19), are that on October 19, 2010, he advised Mr. Bey that he missed a court appearance and directed him to return to court at 2:00PM (Compl.¶ 44). Upon Mr. Bey's return to court later that day, he was arrested. (Compl.¶ 44 .) Defendant Cohen argues that the

claims against him must be dismissed because: (1) the Court lacks subject matter jurisdiction, (2) he was never properly served, and (3) the Complaint fails to state a claim.

The Court finds Defendant Cohen's jurisdictional arguments to be without merit as (1) the Complaint asserts claims for violations of the United States Constitution so this Court has subject matter jurisdiction, *see* 28 U.S.C. § 1331, and (2) allegations of improper service, without a sworn affidavit, are insufficient to establish improper service, *see United States v. Riser*, No. 10–CV–4550, 2011 WL 1004566, at *3 (E.D.N.Y. Mar. 16, 2011).

However, the Court finds that Mr. and Mrs. Bey have failed to state a cognizable claim for relief against Defendant Cohen. Their claims arising under Section 1983 fail because Defendant Cohen is not a state actor. *See Browdy v. Karpe*, 131 F. App'x 751, 753 (2d Cir.2005) ("[C]ourt-appointed attorneys 'performing a lawyer's traditional functions as counsel' to a defendant do not act 'under color of state law' and, therefore, are not subject to suit under 42 U.S.C. § 1983." (quoting *Rodriguez*, 116 F.3d at 65–66)). And to the extent that Mr. and Mrs. Bey attempt to cure this defect by conclusorily alleging that Defendant Cohen conspired with state officials, "[a] merely conclusory allegation that a private [party] acted in concert with a state actor does not suffice to state a § 1983 claim against [a] private [party]." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir.2002) (citation omitted); *accord Browdy*, 131 F. App'x at 753.

Accordingly, all constitutional claims (and for the reasons discussed above, all other claims) against Defendant Cohen must be dismissed.

### D. *Defendant Kreger's Motion to Dismiss*

Mr. and Mrs. Bey's claims against Defendant Kreger arise out of her appointment as the Bey Children's law guardian. Defendant Kreger argues that the claims asserted against her must be dismissed because: (1) she is protected by quasijudicial immunity; (2) Mr. and Mrs. Bey lack standing to assert claims against her; (3) Mr. and Mrs. Bey lack privity with her; (4) the claims are barred by the *Rooker–Feldman* doctrine; (5) the Complaint does not contain a short and concise statement of Plaintiffs' claims in violation of Rule 8 of the Federal Rules of Civil Procedure; and (6) the Complaint fails to state a claim upon which relief can be granted. Because the Court finds that Defendant Kreger is protected by quasi-judicial immunity, it will not address her other arguments.

**\*9** Courts in New York have consistently held that law guardians are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment. *See Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir.2009); *Dowlah v. Dowlah*, No. 09–CV–2020, 2010 WL 889292, at *7 (E.D.N.Y. Mar. 10, 2010) (collecting cases); *see also Bluntt v. O'Connor*, 291 A.D.2d 106, 116–119, 737 N.Y.S.2d 471 (4th Dep't 2002) ("[M]ost courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasijudicial immunity to the attorneys for actions taken within the scope of their appointments." (collecting cases)).

Because all of the claims against Defendant Kreger arise out of activities taken within the scope of her appointment as the Bey Children's legal guardian (*i.e.,* participating in proceedings in Family Court (Comp.¶ 50) and interviewing the Bey Children about their parents (Compl.¶ 53)), her actions are protected by quasi-judicial immunity. Therefore, for this reason and the reasons discussed above, the Court GRANTS her motion, and all claims against Defendant Kreger are dismissed. [8]

[8]  Defendant Kreger also filed a letter motion asking this Court to *sua sponte* dismiss the claims asserted against her. (Docket Entry 18.) This motion is DENIED AS MOOT.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) The pending motions to dismiss are GRANTED (Docket Entries 25, 29, 32), and all claims (including cross-claims) against Defendants Sullivan, Dane, Kreger, Fitzgerald, Coppola, and Cohen are DISMISSED; [9]

[9]  With the exception of any claims for declaratory judgment arising under state law, all claims are DISMISSED WITH PREJUDICE.

(2) Ms. Kreger's letter motion asking the Court to *sua sponte* dismiss the claims against her (Docket Entry 18) is DENIED AS MOOT;

(2) Mr. Bey's motions to vacate (Docket Entries 19, 27) are DENIED, and all claims brought on behalf of Rein, Drizzle,

Truth, and Amicus Curiae Bey are DISMISSED without prejudice; and

(3) Mr. Bey's motion for a default judgment (Docket Entry 39) is DENIED; and

4) Mrs. Bey's remaining claims will be dismissed without prejudice unless the Court receives a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to terminate Judge Sullivan, Judge Dane, Ms. Kreger, Ms. Fitzgerald, and Mr. Cohen as Defendants and Rein, Drizzle, Truth, and Amicus Curiae Bey as Plaintiffs. The Clerk of the Court is also directed to terminate the motion at Docket Entry 23 (*see supra* page 2 n. 2) which is not a motion but rather Defendant Cohen's opposition to Plaintiff's motion to vacate. The Clerk of the Court is further directed to mail a copy of this Memorandum and Order to each of the *pro se* Plaintiffs.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4370272

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

1.  Bey v. New York
    2012 WL 4370272 , E.D.N.Y. , Sep. 21, 2012

**Related References (1)**

2.  Bey v. New York
    2013 WL 3282277 , E.D.N.Y. , June 25, 2013

**Filings**

There are no Filings for this citation.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by   McKnight v. Middleton,   E.D.N.Y.,   March 29, 2010

2008 WL 1945308
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John Jay HUMPHREY, Plaintiff,
v.
COURT CLERK FOR THE
SECOND CIRCUIT, Defendant.

No. 508-CV-0363 (DNH)(DEP).
|
May 1, 2008.

**Attorneys and Law Firms**

John Jay Humphrey, pro se.

### DECISION and ORDER

DAVID N. HURD, District Judge.

*1  The Court has received plaintiff John Jay Humphrey's *pro se* complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), for review, together with an *in forma pauperis* application. [1] Dkt. Nos. 1, 2. For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

[1]    The Court notes that plaintiff has filed numerous actions in this District in addition to the present case. *See Humphrey v. Onondaga County Sheriff,* 5:02-CV-1524 (NPM/DEP); *Humphrey v. State of New York,* 5:03-CV-1181 (HGM/GJD); *Humphrey v. U.S. Gov't,* 5:04-CV-145 (HJM/GJD); *Humphrey v. Carni,* 5:05-CV-0253 (FJS/GHL); *Humphrey v. WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP); *Humphrey v. Rescue Mission,* 5:05-CV-0795 (NAM/GJD); *Humphrey v. Rescue Mission,* 5:05-CV-0986 (FJS/GJD); *Humphrey v. Onondaga County Dep't of Soc. Servs.,* 5:05-CV-987 (NAM/GJD); *Humphrey v. Styers,* 5:05-CV-1036 (FJS/GHL); *Humphrey v. Court Clerk, NDNY,* 5:05-

CV-1159 (NAM/GJD); *Humphrey v. Weichert,* 5:05-CV-1205 (NAM/GJD); *Humphrey v. Two Unknown Fed. Employees,* 5:06-CV-0786 (NAM/DEP); *Humphrey v. Onondaga County Sheriff's Dep't,* 5:07-CV-0721 (DNH/GJD); *Humphrey v. Onondaga County Sheriff's Dep't,* 5:07-CV-1102 (DNH/GJD).

### I. *Background*

In his *pro se* complaint, plaintiff claims that the Clerk of the United States Court of Appeals for the Second Circuit failed to inform him until "months later" that his appeal was dismissed in three of his prior actions, *Humphrey v. WIXT News Channel 9,* 5:05-CV-0636 (FJS/DEP), *Humphrey v. Weichert,* 5:05-CV-1205 (NAM/GJD); *Humphrey v. Two Unknown Fed. Employees,* 5:06-CV-0786 (NAM/DEP). Dkt. No. 1 at ¶¶ 1, 4-7. According to plaintiff, the Clerk's failure to communicate with him hindered his ability to petition the United States Supreme Court for writs of *certiorari* in these actions. *Id.* at ¶¶ 10, 13. Plaintiff further alleges that the Clerk neglected to provide him with the status of his appeal in the action titled *Humphrey v. Styers,* 5:05-CV-1036 (FJS/GHL). *Id.* at ¶¶ 3, 8. Plaintiff seeks monetary relief in the amount of One Million Dollars. *Id.* at p. 4. For a more complete statement of plaintiff's claims, reference is made to the complaint.

### II. *Discussion*

Turning to plaintiff's *in forma pauperis* application, the Court finds that he may properly commence this action *in forma pauperis* because he sets forth sufficient economic need. Dkt. No. 2.

Since the Court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis,* the Court must now consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that-... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [2] 28 U.S.C. § 1915(e)(2)(B). Thus, the court has a responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis.* [3] *See id.* Although courts have a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,*

912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility placed upon the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* notwithstanding the fact the plaintiff has paid the statutory filing fee); *Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994) (finding that a district court has the power to dismiss a case *sua sponte* for failure to state a claim).

2    In determining whether an action is frivolous, the Court must determine whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3    Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327.

**\*2**  As noted, plaintiff seeks to assert claims against the defendant for the violation of his constitutional rights. *Bivens* actions, although not precisely parallel, are the federal analog to Section 1983 actions against state actors. *See Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir1987) (noting that there is a "general trend in the appellate courts" to incorporate Section 1983 law into *Bivens* cases) (citation and quotations omitted).[4]

4    Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).

Plaintiff maintains that the "Court Clerk" for the Second Circuit Court of Appeals improperly failed to communicate with him regarding the status of the appeals in four of his cases. A review of the appellate dockets in *Humphrey v. Weichert, Humphrey v. Two Unknown Federal Employees,*

and *Humphrey v. WIXT News Channel 9* reveals that plaintiff indeed was immediately notified of the mandates dismissing his appeals in those actions.[5] *See Humphrey v. Weichert,* Appellate Action No. 05-6846; *Humphrey v. Two Unknown Federal Employees,* Appellate Action No. 07-0631; *Humphrey v. WIXT News Channel 9,* Appellate Action No. 05-4122. Plaintiff's appeal in *Humphrey v. Styers* remains pending, and plaintiff is free to inquire regarding the status of his case at any time. *See Humphrey v. Styers,* Appellate Action No. 05-6695.

5    It bears mentioning that in *WIXT News Channel 9,* the docket reflects that the notice sent to plaintiff regarding the issuance of a mandate dismissing his appeal for failure to comply with the scheduling order in that action was returned as undeliverable. That fact, however, is not determinative of the validity of plaintiff's claim.

The Court also notes that plaintiff does not clearly allege wrongdoing on the part of the individual who serves as the Clerk of the Court for the Second Circuit, as opposed to one or more of the individuals employed in the Clerk's Office. As with claims asserted under Section 1983, a plaintiff seeking to recover money damages in a *Bivens* action must establish that the named defendant was personally involved in the misconduct complained of.[6] *See Elmaghraby v. Ashcroft,* No. 04 CV 01809, 2005 WL 2375202, at \*11 (E.D.N.Y. Sept. 27, 2005), *reversed on other grounds, Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007); *Richardson v. Goord,* 347 F .3d 431, 435 (2d Cir.2003) (discussing supervisory liability in context of a section 1983 claim); *see also Wilson v. Layne,* 526 U.S. 603, 609 (1999) (explaining that the qualified immunity analysis under *Bivens* is identical to the analysis under section 1983). In this case, plaintiff has not set forth sufficient facts to establish that the Clerk of the Court was personally involved in the actions complained of. In light of plaintiff's *pro se* status, the Court has considered whether plaintiff's complaint states a claim upon which relief could be granted assuming, *arguendo,* that he has properly identified the defendant and concludes that it does not.

6    A supervisory official can, however, be personally involved in a constitutional violation in one of several ways: (1) the supervisor may have directly participated in the challenged conduct; (2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; (3) the supervisor may

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 62 of 90
Humphrey v. Court Clerk for the Second Circuit, Not Reported in F.Supp.2d (2008)
2008 WL 1945308

have created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or (5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

Courts have extended judicial immunity to court clerks for the performance of tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *see also Kampfer v. Rodriguez,* No. 97-CV-739, 1998 WL 187364, at *2 (N.D.N.Y. Apr. 15, 1998) (Pooler, D .J.). Court clerks enjoy absolute immunity even for administrative functions if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court. *Rodriguez,* 116 F.3d at 67. A court clerk, however, may not be entitled to absolute immunity in all cases, such as where the clerk's refusal to accept the papers of a litigant seeking to commence an action under a state statute results in the deprivation of the litigant's constitutional rights. *LeGrand v. Evan,* 702 F.2d 415, 418 (2d Cir.1983). In this case, plaintiff's allegations arise out of and relate to actions taken by court personnel which were in accordance with the established practice of the Second Circuit, and pursuant to the direction of a judicial officer as articulated in the relevant appellate mandates; accordingly, these actions constitute an integral part of the judicial process and are shielded from liability by judicial immunity. In any event, although plaintiff contends that the Clerk's alleged failure to communicate with him deprived him of his right to seek writs of *certiorari,* the pertinent dockets indicate that

such notification did indeed occur. Accordingly, defendant Clerk of the Court for the United States Court of Appeals for the Second Circuit is hereby dismissed with prejudice. [7]

[7]    In addition, while not deciding this matter on this basis, the Court notes that it is not clear that venue is appropriate in this District. *See* 28 U.S.C. § 1391(b).

### III. *Conclusion*

**\*3** Plaintiff's complaint, as drafted, is not sufficient to state a claim for the violation of plaintiff's constitutional rights by the named defendant. The named defendant is immune from damages on the claims asserted in this *Bivens* action and the complaint lacks an arguable basis in law or in fact. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

THEREFORE, it is hereby

ORDERED, that

1. This action is DISMISSED;

2. Plaintiff's *in forma pauperis* application is DENIED as moot; and

3. The Clerk of the Court is directed to serve a copy of this Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 1945308

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 5:08cv00363**<br>HUMPHREY v. COURT CLERK FOR THE SECOND CIRCUIT | — | N.D.N.Y. | Apr. 02, 2008 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

**MEMORANDUM OPINION & ORDER**

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the
City of New York, former New York County Assistant
District Attorney Dustin Chao, and eight members of the New
York City Police Department ("NYPD") under 42 U.S.C.
§ 1983 and state law. Moye claims that Chao is liable for
damages under Section 1983 and state law for malicious
prosecution, abuse of process, denial of a fair trial, fabrication
of evidence, conspiracy "to inflict an unconstitutional injury,"
and intentional and negligent infliction of emotional distress.
(Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh,
and Ninth Claims) Chao has moved to dismiss the Amended
Complaint on grounds of absolute immunity. For the reasons
stated below, Chao's motion to dismiss will be granted.

**BACKGROUND**

For purposes of deciding Defendant Chao's motion to dismiss,
the Court has assumed that the following facts presented in
the Amended Complaint are true.

**I. *MOYE'S ARREST***

On or about March 12, 2002, at approximately 8:00
p.m., NYPD officers Paul Jeselson and Tawaina O'Neal
were stationed on the rooftop of an apartment building

on the south side of West 118th Street near the corner
of Morningside Avenue conducting nighttime narcotics
surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located
on the north side of West 118th Street, near Manhattan
Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed
Plaintiff "extend his hand from the driver's side window and
hand a small glassine" to another individual—later arrested
—who, in turn, handed it to an unapprehended customer. (*Id.*
¶ 20) The Defendant officers moved in and arrested Moye in
the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the
officers searched Moye and his car and found United States
currency, both in Moye's possession and inside the vehicle.
(*Id.* ¶ 27) The Defendant officers unnecessarily grabbed
Moye, pushed him, and placed excessively tight handcuffs on
him (*id.* ¶ 30), causing him to suffer bruises to and numbness
in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal
Possession of a Controlled Substance in the Third Degree.
(Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that
the police officer defendants "conspired [to give] and gave
false testimony and intentionally placed false evidence before
the grand jury." [1] (Am.Cmplt.¶ 35)

[1]     The Amended Complaint does not disclose what
        false testimony or other false evidence was laid
        before the grand jury. Moreover, there is no
        suggestion that Chao was involved in presenting
        false testimony or false evidence to the grand jury.

**II. *MOYE'S FIRST TRIAL***

Moye's first trial began on January 14, 2003. (Schwartz Decl.,
Ex. B) A.D.A. Chao introduced photographs at trial which
he claimed showed the position of Plaintiff s car as it was
parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer
Jeselson, and Officer Papa were present when a District
Attorney's office photographer took these photos in June 2002
from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42,
44) Although the photographs were intended to convey the
vantage point of the officers on the night of the arrest, they did
not replicate the "nighttime conditions." (*Id.* ¶ 45) According
to Moye, these photographs nonetheless showed that the
officers could not have seen Plaintiff extend his hand from
the driver's side window and pass a small glassine to another
individual, because the driver's side could not be seen from
the vantage point of the rooftop observation post, even with
binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

*2 In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

*3 "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

**IV.** *THE CHARGES AGAINST MOYE ARE DISMISSED*
On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

*DISCUSSION*

**I.** *IMMUNITY*

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]    Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4**    As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

### A. *Legal Standard for Absolute Prosecutorial Immunity*

A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]     District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

 **\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83.[4]

[4]    By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue...." ) Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

> [5]  Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony...." ' ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard,* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express [ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Filings (3)

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. First Amended Complaint**<br>Ronald MOYE, Plaintiff, v. THE CITY OF NEW YORK; Sgt. Nelson Caban, Shield # 5131; P.O. Paul Jeselon, Shield # 24653; P.O. Samuel Fontanez, Shield # 25590; P.O. Edward Simonetti, Shield # 23722; P.O. Matthew Boorman, Shield # 28212; P.O. Frank Papa, Shield # 29209; P.O. Tawaina O'Neal, Shield # 19346; P.O. Brennan; P.O. John Does # 1-10; P.O.; and A.D.A. Dustin Chao, Defendants.<br>2011 WL 12881748 | PDF | S.D.N.Y. | July 05, 2011 | Pleading |
| **2. Complaint**<br>Ronald MOYE, Plaintiff, v. THE CITY OF NEW YORK; Robert M. Morgenthau, New York County District Attorney's Office; Sgt. Nelson Caban, Shield # 5131; P.O. Paul Jeselon, Shield # 24653; P.O. Samuel Fontanez, Shield # 25590; P.O. Edward Simonetti, Shield # 23722; P.O. Matthew Boorman, Shield # 29209; P.O. Tawaina O'neal, Shield # 19346; P.O. Brennan; P.O. John Does # 1-10; P.O.; and A.D.A. Dustin Chao, the individual defendant (S) sued individually and in<br>2011 WL 232313 | PDF | S.D.N.Y. | Jan. 14, 2011 | Pleading |
| **3. Docket 1:11cv00316**<br>MOYE v. THE CITY OF NEW YORK ET AL | — | S.D.N.Y. | Jan. 14, 2011 | Docket |

**History**

There are no History results for this citation.

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant District
Attorney Robert Henoch, Captain of Corrections Martin,
Corrections Officer Schmidt, Corrections Officer Brown
and Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages on the grounds that the defendants—the City of New York, an Assistant District Attorney, and certain Corrections Officers—violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by failing to protect him from an attack by fellow inmates against whom he had arranged to testify. Johnson also asserts two tort claims. The Assistant District Attorney moves to dismiss the complaint as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is granted and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed to be true for purpose of this motion. In May of 1998 Johnson was arrested for allegedly selling crack cocaine. Complaint at 4. Shortly after his arrest, he entered into a cooperation agreement with ADA Henoch to testify against several of his co-defendants. [1] *Id.* ADA Henoch allegedly "assured" plaintiff at that time that he "would protect him[ ]" from possible retaliation by his co-defendants. *Id.* Johnson claims that he was being held in Beacon, a housing area on Rikers Island, which was in "the same general area" as where the

people against whom he was to testify were held and that he alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured [him] that he would be safe" and that "he would be placed in protective custody." *Id.* at 4–5. Plaintiff also alerted defendant Corrections Officers Martin, Schmidt, Brown and "Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]    The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow inmates "who called him a snitch as they beat and kicked him." *Id.* As a result of the beating, Johnson suffered a fractured ankle, injuries to his head, neck and legs, and damage to his retina that required surgery. *Id.* ADA Henoch, after learning of the attack on plaintiff, "acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City of New York, Correction Officers Martin, Schmidt, Brown, and ADA Henoch and the ADA has moved to dismiss the complaint on the grounds that it fails to state a constitutional claim for which relief may be granted and that he is entitled to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as true the factual allegations of the complaint and must view the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

I. *Absolute Immunity*

**\*2**  It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722

F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3**  Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818.) To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v.. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d

249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson.[2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, \*3 (S.D.N.Y. Nov. 6, 1995)

(citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

2        Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control

2000 WL 1335865

and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

### III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) (3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

### IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:00cv03626**<br>JOHNSON v. THE CITY OF NEW YORK, ET AL | — | S.D.N.Y. | May 15, 2000 | Docket |

**History**

There are no History results for this citation.

McCaw v. McPartland, Not Reported in Fed. Supp. (2018)

2018 WL 10701609

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 82 of 90

2018 WL 10701609
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael MCCAW, Plaintiff,

v.

Susan P. MCPARTLAND (Retired
Court Reporter), Defendant.

17-CV-6431 (CM)
|
Signed 04/02/2018

**Attorneys and Law Firms**

Michael McCaw, Imperial, CA, pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff Michael McCaw, currently incarcerated at Centinela State Prison in Imperial, California, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendant violated his constitutional rights. By order dated January 8, 2018, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis.* [1]

[1]   Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis. See* 28 U.S.C. § 1915(b)(1).

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471,

474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff alleges that his conviction in the state of California was illegally enhanced by a 1999 New York state conviction for attempted robbery in the third degree. He asserts that the Alhambra District Attorney's Office relied upon "forged" transcripts prepared by Defendant Susan McPartland. He alleges that the events as described in the transcripts are inaccurate. Plaintiff alleges that the transcripts prepared by Defendant indicate that on April 15, 1999, Plaintiff pled guilty to attempted robbery, and on April 23, 1999, he returned to court for sentencing. Plaintiff, however, recalls taking the plea and being sentenced on the same date.

Plaintiff alleges that he was "denied due process" and because of the transcripts, he was "denied a fair sentencing hearing and the opportunity to be released over a year ago." (Compl. at 5.) Plaintiff seeks $1,500,000 in monetary damages because "[f]raming somebody with fabricated evidence is an egregious crime." (*Id.*)

**DISCUSSION**

**A. Qualified Immunity**

Under the doctrine of qualified immunity, court reporters are shielded from suit for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights. *See Antoine v. Byers & Anderson Inc.,* 508 U.S. 429 (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (discussing standard for establishing qualified immunity).

Plaintiff does not assert any facts that suggest that Defendant's conduct violated any of Plaintiff's clearly established statutory or constitutional rights. To the extent Plaintiff attempts to assert that inaccurate transcriptions deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts. *See Curro v. Watson,* 884 F. Supp. 708, 720-23 (E.D.N.Y. 1995), *aff'd,* 100 F.3d 942 (2d Cir. 1996); *see also Burrell v. Swartz,* 558 F. Supp. 91, 92 (S.D.N.Y. 1983) ("No constitutional or federal statutory right exists to an absolutely accurate trial transcript."). Plaintiff does not allege that he

attempted to avail himself of any procedure to have the allegedly improper transcripts corrected, or that he raised the issue on appeal.

**\*2** Plaintiff asserts that the Alhambra District Attorney's Office enhanced his California sentence because of his 1999 New York conviction for attempted robbery. He does not deny the 1999 New York conviction relied upon by the Alhambra District Attorney's Office, but alleges that the plea and sentence in New York occurred on the same day, although the transcripts prepared by Defendant indicate that the plea and sentencing took place on two different dates. Nothing that he alleges suggests that the outcome of the proceedings in California would have been any different if the court proceedings at issue had been transcribed in the manner he desired. It appears, therefore, that Plaintiffs' claims against Defendant must be dismissed on the basis of qualified immunity. *See* 28 U.S.C. § 1915(e) (2)(B)(iii); *see also, e.g., Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) (affirming dismissal of claims against court reporter on basis of qualified immunity, and noting that "allowing ... dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself "permit[s] '[i]nsubstantial lawsuits [to] be quickly terminated.' " " (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982))).

## B. Private Prosecution

To the extent that Plaintiff accuses Defendant of committing a crime, the Court must dismiss this claim. A private individual cannot prosecute a criminal action in federal court. *See Leeke v. Timmerman*, 454 U.S. 83 (1981) (prisoners lack standing to seek the issuance of an arrest warrant); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States ex rel. Farmer v. Kaufman*, 750 F. Supp. 106, 108 (S.D.N.Y. 1990); *New York v. Muka*, 440 F. Supp. 33, 36 (N.D.N.Y. 1977). Furthermore, because federal prosecutors possess discretionary authority to bring criminal actions, they are "immune from control or interference by citizen or court...." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972); *Muka*, 440 F. Supp. at 36. The Court therefore dismisses Plaintiff's claim that may seek the criminal prosecution of Defendant for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 10701609

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:17-CV-06431**<br>McCaw v. McPartland | — | S.D.N.Y. | Aug. 21, 2017 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Irazu v. Sainz De Aja, Not Reported in Fed. Rptr. (2023)

2023 WL 8447256

2023 WL 8447256
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Fernando G. IRAZU, Plaintiff-Appellant,

v.

Margarita Oliva SAINZ DE AJA, Kevin F. Collins,
Jeffrey A. Diamond, Defendants-Appellees.

23-702-cv
|
December 6, 2023

Appeal from a judgment of the United States District Court
for the District of Connecticut (Victor A. Bolden, *Judge*;
Robert M. Spector, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Fernando G. Irazu, Esq.,
pro se, Buenos Aires, Argentina.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: DEBRA ANN LIVINGSTON, Chief Judge,
DENNY CHIN, MICHAEL H. PARK, Circuit Judges.

## SUMMARY ORDER

**\*1** Appellant Fernando Irazu, an attorney proceeding *pro
se* and *in forma pauperis*, sued his ex-wife, her attorney, and
Connecticut Superior Court "Caseflow Coordinator" Jeffrey
Diamond for allegedly violating his constitutional rights by
abusing the litigation process during several proceedings
related to his divorce. The district court adopted a report
and recommendation and dismissed his complaint under 28
U.S.C. § 1915(e)(2)(B) because (1) the Caseflow Coordinator
is immune from suit based on the Eleventh Amendment,
quasi-judicial immunity, and 42 U.S.C. § 1983, and (2) the
other defendants are not state actors. The court also denied
Irazu's motion to disqualify the magistrate judge and district
court. We assume the parties' familiarity with the underlying
facts, the procedural history, and the issues on appeal.

We review a *sua sponte* dismissal under 28 U.S.C. § 1915(e)
(2) *de novo*. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d
486, 489 (2d Cir. 2018). A screening dismissal of a complaint
filed *in forma pauperis* is appropriate if the action "(i) is
frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [1]

[1]    To avoid dismissal for failure to state a claim under
§ 1915(e)(2)(B) "a complaint must plead 'enough
facts to state a claim to relief that is plausible on
its face.' " *Hardaway*, 879 F.3d at 489 (quoting
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). Because Irazu is an attorney, we agree with
the district court that, although he is proceeding
*pro se,* he is not entitled to the special solicitude
normally afforded to *pro se* litigants. *Tracy v.
Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

## I. Eleventh Amendment Immunity, Quasi-Judicial Immunity, and § 1983

Irazu's claims for money damages and injunctive relief
against Diamond in both his official and individual capacities
are barred by the Eleventh Amendment, quasi-judicial
immunity, and 42 U.S.C. § 1983. [2]

[2]    Irazu argues the district court erred by solely
considering his claims to be based on § 1983.
He does not, however, explain what other
claims providing federal jurisdiction he asserted.
Accordingly, he has abandoned any such argument.
*See LoSacco v. City of Middletown*, 71 F.3d 88, 92
(2d Cir. 1995) (holding that issues not raised in an
appellate brief are abandoned).

### a. Eleventh Amendment

The Eleventh Amendment provides immunity from suits for
money damages in federal court to states, state entities, and
state officials acting in their official capacities. *See* U.S.
CONST. amend. XI; *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*,
707 F.3d 144, 151–52 (2d Cir. 2013); *Ying Jing Gan v. City
of New York*, 996 F.2d 522, 529 (2d Cir. 1993). The immunity
"extends beyond the states themselves to state agents and
state instrumentalities that are, effectively, arms of a state."
*Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal
quotation marks and citation omitted). As we have noted
before:

Irazu v. Sainz De Aja, Not Reported in Fed. Rptr. (2023)

2023 WL 8447256

Case 6:24-cv-01538-GTS-MJK    Document 12    Filed 04/09/25    Page 87 of 90

**\*2**  Six factors determine whether an entity is an arm of the state: (1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state.

*Gorton v. Gettel,* 554 F.3d 60, 62 (2d Cir. 2009) (internal quotation marks and citation omitted). We have applied these factors to conclude that New York's Unified Court System is an arm of the state protected by Eleventh Amendment immunity, because (among other reasons) New York's courts were established by the New York Constitution and their function is traditionally associated with state government. *Gollomp,* 568 F.3d at 366–68.

The *Gorton* factors yield the same result with respect to the Connecticut Judicial Branch and thus Diamond in his official capacity. The Connecticut Constitution calls for the creation of a judiciary, including superior courts like the one by which Diamond was allegedly employed. *See* CONN. CONST. art. V, § 1. It also dictates that lower court judges will be appointed by the General Assembly in a manner prescribed by law. *Id.* § 3. The state legislature funds, at least partially, the judiciary. *See* Conn. Gen. Stat. § 51-12(a) (Compensation plan). Finally, the "function [of the court system] is traditionally one of ... state government." *Gollomp,* 568 F.3d at 368. Accordingly, the Connecticut Judicial Branch is a state entity protected by the Eleventh Amendment and that shield extends to protect its employees from suits for damages for actions taken in their official capacity. As a judicial employee, Diamond is protected in his official capacity by Eleventh Amendment immunity.

**b. Quasi-Judicial Immunity**

As for Irazu's individual capacity claims for money damages against Diamond, we agree with the district court that Diamond is also shielded by quasi-judicial immunity, which

extends to people, other than judges, "who perform functions closely associated with the judicial process." *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir. 1988) (internal citation and quotation marks omitted). This immunity extends to "all persons—governmental or otherwise—who [are] integral parts of the judicial process." *Briscoe v. LaHue,* 460 U.S. 325, 335 (1983).

We have previously extended absolute immunity to court clerks who were, like Diamond, alleged to have violated a plaintiff's due process rights based on impermissible handling of a case docket. *Rodriguez v. Weprin,* 116 F.3d 62, 66–67 (2d Cir. 1997). "A court's inherent power to control its docket is part of its function of resolving disputes between parties" and therefore a "function for which judges and their supporting staff are afforded absolute immunity." *Id.* at 66.

Like the clerk in *Rodriguez,* Diamond is protected from suit by the judicial nature of docket-management. Accordingly, Irazu's claim for money damages against Diamond in his individual capacity was also correctly dismissed.

**c. Section 1983**

To the extent that Irazu seeks prospective injunctive relief against Diamond, § 1983 itself bars suits for prospective injunctive relief against judicial officers for acts taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) (quoting 42 U.S.C. § 1983). For the same reasons that Diamond was entitled to quasi-judicial immunity, he qualifies as a judicial officer for purposes of § 1983. *See id.* at 761 (concluding that because a parole board commissioner had absolute judicial immunity in his official capacity, he was also protected by § 1983's limitation on injunctive relief); *cf. Mitchell v. Fishbein,* 377 F.3d 157, 174 (2d Cir. 2004) (the lack of entitlement to quasi-judicial immunity led "by the same token" to the inapplicability of § 1983's limitation on injunctive relief). Accordingly, Irazu's claim for injunctive relief against Diamond is also barred, as Irazu did not allege the violation of a declaratory decree or the unavailability of declaratory relief.

**II. State Action**

**\*3**  We also agree with the district court that Irazu's amended complaint fails to adequately allege that either Oliva Sainz de Aja or Collins, neither of whom is a state actor, was acting under color of state law. *See* 42 U.S.C. § 1983; *Meadows v. United Servs., Inc.,* 963 F.3d 240, 243 (2d Cir. 2020) (per

2023 WL 8447256

curiam). While a private entity can act under color of state law for purposes of § 1983 when "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']," Irazu's allegations fail to satisfy any of these tests. *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (internal quotation marks and citation omitted) (alterations in original). Non-governmental lawyers, without more, are not state actors, *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (summary order), and "the mere invocation by defendants of [state] legal procedures" does not transform them into state actors, *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984). Further, Irazu failed to provide any non-conclusory allegations that Diamond and the other defendants were involved in a § 1983 conspiracy. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (dismissing § 1983 conspiracy claim because the "allegations are strictly conclusory.").

Accordingly, the district court correctly dismissed Irazu's claims against Oliva Sainz de Aja and Collins for failure to allege state action.

**III. Recusal**

The district court's decisions to decide the recusal motion and to deny the recusal motion were not only proper but required. *LoCascio v. United States*, 473 F.3d 493, 498 (2d Cir. 2007) (per curiam) ("[A] judge has an affirmative duty to inquire into the legal sufficiency of [an affidavit of prejudice] and not to disqualify himself unnecessarily"); *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."). Irazu's argument that the district court and magistrate judge were biased against him fails because his argument is based on his disagreement with the judges' decisions, which is not grounds for a bias claim. *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

\* \* \*

We have considered Irazu's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court and **DENY** Irazu's motion to supplement the record.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 8447256

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 3:21-CV-00618**<br>Irazu v. Sainz De Aja et al | — | D.Conn. | May 05, 2021 | Docket |

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (7)**

**Direct History (7)**

1. Irazu v. Oliva Sainz De Aja
2022 WL 22846597 , D.Conn. , Mar. 08, 2022 , report and recommendation adopted ( Dec 22, 2022 )

*Subsequently Affirmed by*

2. Irazu v. Sainz De Aja
2023 WL 8447256 , 2nd Cir.(Conn.) , Dec. 06, 2023

3. Irazu v. Sainz De Aja
2022 WL 22846595 , D.Conn. , Dec. 22, 2022

*Motion to Amend Denied by*

4. Irazu v. Sainz De Aja
2023 WL 2821793 , D.Conn. , Apr. 07, 2023

*Affirmed by*

5. Irazu v. Sainz De Aja
2023 WL 8447256 , 2nd Cir.(Conn.) , Dec. 06, 2023

6. Irazu v. Sainz De Aja
2022 WL 22846595 , D.Conn. , Dec. 22, 2022

*Affirmed by*

7. Irazu v. Sainz De Aja
2023 WL 8447256 , 2nd Cir.(Conn.) , Dec. 06, 2023

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.